UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
DANIEL BRAUN,

                    Plaintiff,                16-cv-9533 (JGK)

          - v.-                               OPINION AND ORDER

THE CITY OF NEW YORK, ASSISTANT
COMMISSIONER OF BITS WALLACE, and THE
FIRE DEPARTMENT OF NEW YORK,

                    Defendants.
------------------------------------
JOHN G. KOELTL, District Judge:

     The plaintiff, Daniel Braun, a former firefighter with the

New York City Fire Department ("FDNY"), brings this action

against the City of New York (the "City") and Assistant

Commissioner Wallace of the Bureau of Investigations and Trials

("BITS"),[1] alleging claims under 42 U.S.C. § 1983 for violations

of his rights under the Fourth and Fourteenth Amendments arising

from the termination of his employment and the denial of

disability benefits by the FDNY. He also protests the unsealing

of his criminal records. In his complaint, originally filed on

December 12, 2016 and amended on December 26, 2016 (the "Amended

Complaint"), the plaintiff alleges that his employment was

---

[1] While the plaintiff included the FDNY as a defendant, "[a]ll
actions and proceedings for the recovery of penalties for the
violation of any law shall be brought in the name of the City of
New York and not in that of any agency, except where otherwise
provided by law." See N.Y.C. Charter § 396. The plaintiff's
claims are therefore construed to have been brought against the
City and Assistant Commissioner of BITS Wallace.

terminated, his petition for disability benefits denied, and his criminal records unsealed without due process of law, and that the unsealing of his criminal records was an unreasonable seizure under the Fourth Amendment. The defendants now move to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a

2

court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); see also Estevez v. City of New York, No. 16-cv-00073, 2017 WL 1167379, at *1-2 (S.D.N.Y. Mar. 28, 2017).

## II.

The following facts are undisputed or accepted as true for purposes of the defendants' motion to dismiss.

Beginning in November 2006, the plaintiff was employed as a firefighter by the FDNY. Am. Comp. ¶ 10. In September 2008, the plaintiff injured his right rotator cuff in a motorcycle accident and was placed on paid sick leave for approximately one month and then on light duty until December 2008, when he returned to full duty. Id. ¶¶ 12-13. On July 20, 2009, the plaintiff sustained work-related injuries to both shoulders, including tearing the labrum in his right shoulder and reinjuring his right rotator cuff. Id. ¶¶ 14-15; see Lichtmacher Decl. Ex. 5 (Report of the Medical Committee of the FDNY).

3

On August 12, 2009, the plaintiff was arrested by federal law enforcement authorities for conspiracy to possess and distribute MDMA, a Schedule I controlled substance commonly known as "ecstasy." Braun v. City of New York ("Braun I"), 2014 N.Y. Misc. LEXIS 6269, at * 1 (N.Y. Co. Sept. 10, 2014). In his opposition to the defendants' motion to dismiss, the plaintiff alleges that BITS officers subsequently visited him while he was incarcerated after his arrest. Braun Decl. at 1. On November 22, 2010, the plaintiff pleaded guilty in federal court to two felony counts of conspiracy to distribute marijuana and ecstasy. Braun I, 2014 N.Y. Misc. LEXIS 6269, at *1. The plaintiff did not report his guilty plea to the FDNY. The records relating to the plaintiff's criminal proceedings were initially sealed. Thereafter, by an order dated March 31, 2014, Judge Edward R. Korman of the Easter District of New York unsealed the records. Id. at *1-2.

On or about March 4, 2011, approximately three months after the plaintiff's guilty plea, the FDNY Medical Committee examined the plaintiff and found him permanently unfit for duty as a firefighter due to his previous injuries. Am. Compl. ¶¶ 22-23; Lichtmacher Decl. Ex. 5. The plaintiff alleges that this was the first of three stages necessary to receive permanent disability benefits, known as Disability Retirement. Am. Compl. ¶¶ 28-29. The plaintiff did not complete the subsequent two stages.

4

By letter dated December 9, 2013, the FDNY informed the plaintiff that pursuant to New York Public Officers Law § 30(1)(e) he had vacated his position as a firefighter by virtue of his guilty plea. Lichtmacher Decl. Ex. 3. The plaintiff alleges that on or about December 10, 2013, he showed up to work and was informed that his employment had been terminated. Am. Compl. ¶ 25. On or about February 8, 2014, the plaintiff again submitted an application for Disability Retirement, which the FDNY denied. Id. ¶ 38.

On February 27, 2013, as part of a BITS investigation of the plaintiff's arrest, the plaintiff testified that he understood that if he pleaded guilty or was convicted of a felony, he forfeited his position as a firefighter by operation of the New York Public Officers Law. Braun I, 2014 N.Y. Misc. LEXIS 6269, at *2. However, the plaintiff refused to answer questions about his guilty plea. Id. at *2-3. The plaintiff alleges that in connection with the BITS investigation, the defendants showed the plaintiff records from the plaintiff's criminal case. Am. Compl. ¶ 34. The plaintiff alleges that the defendants refused to grant him access to those records and to medical records. Id. ¶ 32.

On January 17, 2014, the plaintiff commenced an action in New York State Supreme Court under Article 78 of the New York Civil Practice Law and Rules, seeking all documents upon which

the defendants based his termination as a firefighter, and alleging that the FDNY had improperly failed to act on his application for disability benefits. See Braun I, 2014 N.Y. Misc. LEXIS 6269; Am. Compl. ¶ 32; Affirmation of Daniel Braun Supp. Mot. Show Cause ¶¶ 3, 8, 10, Braun I, 2014 N.Y. Misc. LEXIS 6269 (Dkt. No. 3). By an order dated September 10, 2014, the Braun I court dismissed the plaintiff's action and dismissed his application for disclosure of records because the plaintiff had not demonstrated that a valid cause of action existed for the termination of his employment, the denial of his application for Disability Retirement, or for the violation of any right to privacy in his criminal records. Id. at *7-8. On December 12, 2016, the plaintiff commenced this action.

## III.

The thrust of the plaintiff's claims is that the FDNY deprived him of property interests without due process in violation of the Fourteenth Amendment by terminating his employment, denying his petition for Disability Retirement, and by the "illegal unsealing" of his criminal records. Am. Compl. ¶¶ 41-45. He also alleges that the unsealing of his criminal records violated the Fourth and Fourteenth Amendments.

## A.

The defendants argue that Braun I precludes the plaintiff's claims under the doctrine of collateral estoppel, which

precludes a party from relitigating an issue that the party previously litigated and lost. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979). Federal courts apply the collateral estoppel rules of the state that rendered the prior judgment. LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002). "Under New York law, collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same.'" Id. (quoting Ryan v. New York Tel. Co., 467 N.E.2d 487, 490 (N.Y. 1984)). "New York courts apply collateral estoppel, or issue preclusion, 'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.'" Id. (quoting Parker v. Blauvelt Volunteer Fire Co., 712 N.E.2d 647, 651 (N.Y. 1999)). Issues decided in an Article 78 proceeding in New York state court are entitled to preclusive effect in subsequent Section 1983 litigation in federal court. Parker, 712 N.E.2d at 651.

Braun I necessarily decided that the plaintiff could not state a claim with respect to his termination, the denial of his petition for Disability Retirement, or the unsealing of his criminal records. The plaintiff commenced Braun I in order to

obtain pre-action disclosure of documents by the defendants relating to the termination of his employment and the unsealing of his criminal records. In order to prevail, the plaintiff was required to "allege facts to show that a cause of action exists." Braun I, 2014 N.Y. Misc. LEXIS 6269, at *7. The Braun I court determined that the plaintiff could not "state a cause of action for wrongful termination because [the plaintiff's] employment automatically terminated when he entered his guilty plea on November 22, 2010 pursuant to Public Officers Law § 30(1)(e)."[2] Id. Because Braun I determined that the plaintiff's termination was automatic as of November 22, 2010, the court also found that the plaintiff could not state a claim for the subsequent denial of the plaintiff's petition for Disability Retirement on March 4, 2011 or later. Id. at *8. Braun I further determined that the plaintiff could not "establish a right to privacy cause of action" based on the claim that the FDNY allegedly obtained the records from his criminal case. Id. at

---

[2] Public Officers Law § 30(1)(e) provides:

> 1. Every office shall be vacant upon the happening of one of the following events before the expiration of the term thereof:
>
> . . .
>
> e. [the office holder's] conviction of a felony, or a crime involving a violation of his oath of office . . . .

*7-8. Thus, Braun I decided each of the issues the plaintiff now seeks to litigate in his due process claim.

The plaintiff contends, however, that the parties did not actually litigate whether the plaintiff received procedural due process in connection with the termination of his employment, the denial of his petition for Disability Retirement, or the unsealing of his criminal records, and that Braun I therefore does not have preclusive effect on those claims in this case. This argument is without merit.

The plaintiff had a full and fair opportunity to litigate the propriety of his termination and the denial of his petition for Disability Retirement in Braun I. In Braun I, the plaintiff did not contend -- and does not contend in this case -- that Public Officers Law § 30(1)(e) provided insufficient process with respect to the termination of his employment. Rather, the plaintiff's due process claim with respect to his employment and Disability Retirement depends on the contention that the plaintiff's employment was not terminated until December 10, 2013, over three years after his guilty plea. Am. Compl. ¶ 25. That contention is untenable.

In Braun I, the plaintiff acknowledged that "under Public Officers Law § 30(1)(e), a guilty plea to a felony automatically terminates a member's employment with the FDNY." Sur-Reply Peter J. Gleason ¶ 11, Braun I, 2014 N.Y. Misc. LEXIS 6269 (Doc. No.

9

13). However, the plaintiff contended that "[t]he question is whether there was a guilty plea in the first place, and proof thereof." Id. The determination in Braun I that there was a guilty plea, and Braun I's holding that that the plaintiff's termination was automatic as of the date thereof, November 22, 2010, is thus dispositive of the plaintiff's due process claim with respect to his employment and the denial of Disability Retirement. Because the plaintiff had no property interest in his employment, and therefore no property interest in Disability Retirement, as of November 22, 2010, he could not have been deprived of them without due process after that date.[3] See Greene v. McGuire, 683 F.2d 32, 35 (2d Cir. 1982) (once the petitioning ex-New York City police officers were convicted, "they lost their property interest" in their employment); Winston v. City of New York, 759 F.2d 242, 249 (2d Cir. 1985); see also Weissinger v. Ward, 704 F. Supp. 349, 352 (E.D.N.Y. 1989) ("Once the conviction for a felony or violation of oath of office has been established, the conditions of Section 30(1)(e) are fulfilled and any property or liberty interest in a prior position is lost."); Gunning v. Codd, 403 N.E.2d 1208, 1210

---

[3] As discussed below, the plaintiff also has not sufficiently pleaded that he had a property interest or a privacy interest in the sealing of his criminal records.

(N.Y. 1980) (police officer had no right to apply for retirement pension pending the entry of judgment of his conviction).

Thus, the plaintiff had a full and fair opportunity to litigate the propriety of the termination of his employment and the denial of Disability Retirement in his state court proceeding. That proceeding determined that the plaintiff had been terminated automatically on November 22, 2010 and therefore had no interest in his position as a firefighter, or in Disability Retirement, thereafter. Restyling his claims as a violation of due process does not entitle the plaintiff to relitigate those same issues in federal court.

**B.**

The plaintiff's claim for a violation of due process fails for the independent reason that he has failed to allege the necessary elements for such a claim. To sustain a Section 1983 claim for deprivation of due process under the Fourteenth Amendment, the plaintiff must sufficiently allege (1) that he had a property interest in his employment, Disability Retirement, or sealed criminal records, and (2) that he did not receive constitutionally adequate process before being deprived of those interests. Ciambriello v. Cty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002); see also Men of Color Helping All Soc., Inc. v. City of Buffalo, 529 F. App'x 20, 23 (2d Cir. 2013). The plaintiff's claim under Section 1983 for violation of the

Fourteenth Amendment fails because the plaintiff has not pleaded that he was deprived of any property interest without constitutionally sufficient process. Under New York law he was only entitled to receive the process afforded to him in his criminal case, and he had no constitutionally protected property interest in his sealed criminal records.

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Under New York law, a public officer loses any property interest in the officer's job upon conviction of a felony. Public Officers Law § 30(1)(e) provides that "[e]very office shall be vacant upon . . . [the office holder's] conviction of a felony," N.Y. Pub. Off. Law § 30(1)(e), and the New York Court of Appeals has held that "[t]he directive contained in section 30 of the Public Officers Law is clear and unqualified: every public office becomes vacant upon the officer's conviction of a felony." Toro v. Malcolm, 375 N.E.2d 739, 741 (N.Y. 1978); see Greene, 683 F.2d at 34 (Section 30(1)(e) operates to "absolutely" vitiate any tenure an employee has in their job).

The deprivation of the plaintiff's employment came only after he received the process afforded by his criminal

proceedings. He was afforded due process when he pleaded guilty. This process was constitutionally sufficient. In Greene, the plaintiffs were terminated as New York City police officers pursuant to Section 30(1)(e), but their convictions were later vacated by the state appellate court. Id. at 33. The Second Circuit Court of Appeals held that the police department's denial without a hearing of their petition for reinstatement did not deprive them of a property interest in violation of the Fourteenth Amendment because they had automatically lost any property interest in their employment upon conviction. The Court of Appeals explained that the operation of Section 30(1)(e) comports with the Constitution's guarantee of due process because "[i]t becomes operative only after a determination by an independent body that the officer has been guilty of serious misconduct." Id. at 35; see also Weissinger, 704 F. Supp. at 351.

The plaintiff argues that the defendants violated his due process rights by "illegally block[ing] plaintiff from continuing the process to obtain the permanent disability to which he is entitled, even though his job related injuries occurred prior to his arrest." Am. Compl. ¶ 31. But the timeline alleged in the Amended Complaint belies this contention. The plaintiff underwent his initial evaluation seeking Disability Retirement on March 4, 2011, Am. Compl. ¶ 22, over three months

after his guilty plea on November 22, 2010, when Braun I
determined that he had automatically lost his position with the
FDNY. The defendants' refusal to allow him to continue the
application process did not implicate due process because the
plaintiff had no property interest in Disability Retirement when
he applied for it. Indeed, the plaintiff lost any right to
Disability Retirement when he pleaded guilty to felonies on
November 22, 2010.

Green is instructive on this point. The plaintiffs in
Greene complained that they were denied a hearing when they
sought reinstatement, but the Second Circuit Court of Appeals
explained that "they had neither the right to return nor any
reasonable expectation of being rehired. Because state law left
them nothing, Commissioner McGuire's decision deprived them of
nothing. His decision did not implicate due process." Greene,
683 F.2d at 35; see Toro, 375 N.E.2d at 741 (holding that an
employee who is reinstated after vacatur by operation of Section
30(1)(e) is not entitled to back pay).

Likewise, in Mahoney v. McGuire, the Appellate Division,
First Department, held that the New York City Police Department
Pension Board was "justified, if not obligated, to defer action
upon petitioner's application" for retirement on medical
disability where, subsequent to the petitioner's injury and the
Medical Board's recommendation in favor of medical benefits, the

14

petitioner was charged with insurance fraud. <u>Mahoney v. McGuire</u>, 487 N.Y.S.2d 13, 16 (App. Div.) ("It is the public policy of this State not to pension employees who have betrayed the faith reposed in them by virtue of their position."), <u>aff'd</u> 485 N.E. 2d 236 (N.Y. 1985).

Similarly, the New York Court of Appeals held in <u>Gunning</u> that an employee terminated by operation of Section 30 is not entitled to apply subsequently for a retirement pension pending entry of the judgment of conviction. <u>Gunning</u>, 403 N.E.2d at 1210 ("to permit a public officer, found guilty by a jury of his peers, to remain in office pending sentencing and thereby afford him the opportunity to obtain a lifetime pension would circumvent the clearly defined purpose of section 30 of the Public Officers Law. Such a result simply cannot be tolerated."). Just as the petitioner in <u>Gunning</u> did not have a property interest in the potential pension benefits from his pre-conviction employment, the plaintiff in this case did not have a property interest in the potential disability benefits for his pre-conviction injuries.[4]

Nor did the plaintiff have a constitutionally protected "property interest" in his sealed criminal records within the

---

[4] The defendants also contend that the plaintiff's claims relating to his termination and disability benefits are time barred. Because of the disposition in this Opinion, it is unnecessary to reach that argument.

meaning of the Fourteenth Amendment. In <u>Roth</u>, the Supreme Court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." <u>Roth</u>, 408 U.S. at 577. The plaintiff had no such legitimate claim of entitlement to his criminal records or to their sealing. The plaintiff points to no statute compelling the sealing of federal criminal records, and the Federal Rules of Criminal Procedure commit the sealing of records to the discretion of the district court. Fed. R. Crim. P. 49.1(d). Moreover, the records were government property; they were neither owned nor possessed by the plaintiff. Any interest the plaintiff had in the sealed criminal records pertaining to him is properly construed under the Fourth Amendment, discussed below. Therefore, the plaintiff cannot state a claim relating to the unsealing of those records under the Due Process Clause of the Fourteenth Amendment.

The plaintiff's claim under Section 1983 for violation of his due process rights under the Fourteenth Amendment is **dismissed.**

### C.

The plaintiff also has not pleaded a Section 1983 claim for violation of his rights under the Fourth Amendment, as applied

to state action under the Fourteenth Amendment.[5] The plaintiff alleges that the defendants obtained his sealed criminal records "by an illegal seizure." Am. Compl. ¶ 54. For the disclosure of personal information to implicate the Fourth Amendment, there must be a reasonable expectation of privacy in the disclosed information. See Barry v. City of New York, 712 F.2d 1554, 1564 (2d Cir. 1983). To sustain his claim for this alleged seizure under the Fourth Amendment, therefore, the plaintiff must have had a reasonable expectation of privacy in his criminal records. See e.g., Johnson ex rel. Johnson v. Columbia Univ., No. 99-cv-3415 (GBD), 2003 WL 22743675, at *11 (S.D.N.Y. Nov. 19, 2003) (collecting cases).

The plaintiff had no reasonable expectation of privacy in his sealed criminal records. "In fact, courts have held that the right of confidentiality does not prohibit the disclosure of an individual's criminal history, including the individual's arrest records." Johnson ex rel. Johnson, 2003 WL 22743675, at *11 (collecting cases); McCrary v. Jetter, 665 F. Supp. 182, 184 (E.D.N.Y. 1987) (no constitutionally protected interest in the confidentiality of youthful offender file); see also Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996) ("There is no violation

---

[5] As explained above, this claim is also barred by collateral estoppel as a result of Braun I.

17

of the United States Constitution in this case because there is no constitutional right to privacy in one's criminal record.").

Moreover, the plaintiff's own allegations demonstrate that he did not have a reasonable expectation of privacy in his criminal records. The plaintiff stated in his opposition papers to the defendants' motion to dismiss that BITS officers visited him in jail immediately after his arrest and that "BITS was clearly informed form the beginning of the arrest that I was in fact arrested and knew of my being prosecuted." Braun Decl. at 1-2. The plaintiff cannot claim that he reasonably believed that his criminal records were private where he attests that he "knew that BITS was monitoring my criminal proceedings as they discussed this with me at times." Id. at 2.

The fact that the record of the court proceedings relating to the plaintiff's guilty plea was allegedly sealed does not create a constitutionally protected right to privacy where none existed. Analogously, the New York Court of Appeals has held that New York Criminal Procedure Law § 160.50, which provides for the sealing of state criminal records under certain circumstances, does not create a constitutionally protected privacy interest in those sealed records. People v. Patterson, 587 N.E.2d 255, 256 (N.Y. 1991) (N.Y. Crim. Proc. Law § 160.50 "is unrelated to any Fourth or Fifth Amendment protections"); see United States v. Jakobetz, 955 F.2d 786, 802 (2d Cir. 1992)

("There is no authority to indicate that [the petitioner's] constitutional rights have been violated. At most, [he] may be able to argue that a New York court violated a statutory right under New York law." (referring to N.Y. Crim. Proc. Law § 160.50)). In this case, the plaintiff's records were not sealed pursuant to a statutory mandate, but rather at the discretion of the district court. The plaintiff's claim that the constitution protects that discretionary sealing is thus even weaker than the claims that were rejected in Patterson and Jakobetz, which dealt with compulsory statutory sealing of state criminal records.

Therefore, the plaintiff's claim under Section 1983 for violation of his rights under the Fourth and Fourteenth Amendments is **dismissed.**

### D.

The plaintiff also alleges a Monell claim for municipal liability against the City for the actions or inactions of Assistant Commissioner of BITS Wallace in failing to advance the plaintiff's application for Disability Retirement. Under the theory of municipal liability announced in Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), a municipality may be liable for the actions of a decisionmaker who "possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of

Cincinnati, 475 U.S. 469, 481 (1986). However, because "neither Monell . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm," liability under Monell is not available where the plaintiff has suffered no deprivation of a constitutional right. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); see Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002).

Because the plaintiff has failed to plead a violation of his constitutional rights, his Monell claim fails and must be **dismissed.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss the Amended Complaint is **granted**. The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:    **New York, New York**
            **February 14, 2018**

                                 **John G. Koeltl**
                      **United States District Judge**